PROST, Circuit Judge,
dissenting.
I would affirm the district court’s construction of the claim phrase “femoral component including at least one condylar element” to require that, in a bi-condylar prosthesis, both condylar elements must satisfy the geometric limitations of the claim. Accordingly, I respectfully dissent.
I
When construing a claim, we evaluate the meaning of a term or phrase in the context of the claim. Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed.Cir.2005) (en banc). As noted by the majority, claim 15 recites:
In a knee prosthesis for replacing the natural knee, the knee prosthesis having a femoral component and a tibial component, the tibial component including a bearing member and the femoral component including at least one condylar element for confronting and engaging the bearing member to accomplish articulation of the knee prosthesis throughout a range of flexion, including a primary range of flexion between a hyperextended position and a flexed position, the engagement between the condylar element of the femoral component and the bearing member of the tibial component ordinarily taking place at a contact area along articular surface areas of the condylar element and the bearing member, the improvement comprising:
anterior-posterior surface profile contours along the condylar element and the bearing member, the anterior-posterior surface profile contour along the condylar element having an essentially constant anterior-posterior articular radius throughout the articular surface area of the condylar element which contacts the bearing member during articulation throughout the primary range of flexion, the anterior-posterior articular radius having an origin lying generally along a line extending laterally between the medial and lateral collateral ligament attachment points on the femur of the natural knee.
'100 patent, col. 6 1.58-col. 8 1.3 (emphases added). This claim can be easily divided into two parts — the first paragraph contains the preamble of the claim and specifies the components of the claimed knee prosthesis, while the second paragraph details the “improvement” of the invention by identifying geometric characteristics of the claimed prosthesis.
In the first paragraph, the claim recites a knee prosthesis having a “tibial component” (for replacing part of the tibia, i.e., shin bone) and a “femoral component” (for replacing part of the femur, i.e., thigh bone). Id. at col. 6 11.58-60; see id. at col. 2 11. 49-56. The tibial component, then, includes a “bearing member,” and the femoral component includes “at least one condylar element” that engages the bearing member to accomplish articulation (i.e., bending at the joint) of the knee prosthesis. Id. at col. 6 1.60-col. 7 1.3. In the second paragraph, the claim describes the “improvement,” which consists of particular geometric limitations. Id. at col. 7 1.4-col. 8 1.3. While the specifics of these geometric limitations are not relevant on appeal, it is significant that the second paragraph describes these geometric limitations as characteristics of “the condylar element” and “the bearing member”— components that were identified by the claim’s first paragraph.
With respect to the meaning of the particular phrase at issue, the claim specifies that the femoral component includes “at *1352 least one condylar element for confronting and engaging the bearing member to accomplish articulation of the knee prosthesis throughout a range of flexion.” Id. at col. 6 11.61-64. In other words, the claim requires “at least one condylar element” for engaging the bearing member to accomplish the bending of the knee prosthesis at the joint between “the condylar element” and the bearing member.[1]
With this language, the claim defines the term “at least one condylar element” — it is the part or parts of the femoral component of the knee prosthesis that “confrontf ] and engag[e] the bearing member to accomplish articulation of the knee prosthesis.” As the majority explained, a bi-condylar prosthesis replaces both of a natural knee’s condyles with two condylar elements, where, in a uni-condylar prosthesis, only one of the two condyles is replaced by a condylar element (the other natural condyle remains in the knee). The parties agreed that, in a bi-condylar prosthesis, both condylar elements are necessary to engage the bearing member “to accomplish articulation.” On the other hand, in a uni-condylar prosthesis, the one condylar element works with the remaining natural condyle “to accomplish articulation.” Because both condylar elements in a bi-condylar prosthesis are required to accomplish articulation, the term “at least one condylar element” must refer to both of the condylar elements of a bi-condylar prosthesis.
The claim, after identifying and defining the claim term “at least one condylar element” in this manner, later refers to “the condylar element.” The parties agree that “the condylar element” is shorthand for “the [at least one] condylar element,” and, thus, we know that the terms “at least one condylar element” and “the condylar element” are coextensive in scope.
Thus, because the claim defines “the [at least one] condylar element” to be all condylar elements that engage and confront the bearing member to accomplish articulation of the knee prosthesis, I would affirm the district court’s construction of “femoral component including at least one condylar element” to require that, in a bicondylar prosthesis, both condylar elements must satisfy the geometric requirements specified in the second paragraph of the claim.
Moreover, the specification supports the district court’s claim construction. The specification always describes knee prostheses with two condylar elements, only includes embodiments where both condylar elements have the same geometric requirements, consistently describes characteristics of the “condylar elements 54” and “each condylar element 54,” and never suggests or indicates that one of the two condylar elements may have different characteristics. While the claim language is admittedly broader than this disclosure — i.e., the parties agree that the claim encompasses a uni-condylar prosthesis which is never disclosed — the specification never indicates that it should be so broad as to encompass a bi-condylar prosthesis having only one of the condylar elements with the claimed geometric requirements, where the other condylar element has an unspecified geometry.
II
Under the majority’s claim construction, however, the claim requires that only one condylar element of a bi-condylar prosthesis satisfy the claim’s geometric require *1353 ments. In support, the majority states that “[t]he plain language of claim 15 requires only one condylar element” and, if the patentee had intended to refer to both condylar elements, he could have drafted the claim more clearly. Majority Op. at 1344. I disagree with this analysis for several reasons.
First, while the majority notes that “at least one condylar element” is correctly understood to mean “one or more,” the opinion fails to explain how this comports with its conclusion that “[t]he plain language of claim 15 requires only one condylar element.” Id.
Second, the majority overlooks the context of the claim, which specifies that the claimed prosthesis include “at least one condylar element for confronting and engaging the bearing member to accomplish articulation of the knee prosthesis throughout a range of flexion.” '100 patent, col. 6 11.61-64 (emphases added). While the majority acknowledges that “to accomplish articulation” is a claim limitation, it characterizes this limitation as a mere “purpose” of the claim rather than a definition of the claimed “at least one condylar element.” Majority Op. at 1344-45. Then, noting that this purpose is “a separate limitation from the geometric requirements appearing in the body of the claim,” the majority concludes that “the mere fact that both condyles are involved in articulation of the prosthesis does not require a construction of claim 15 in which both condyles must conform to the specified geometry.” Id. at 1345. While the majority is correct that these limitations are separate and distinct, the majority’s conclusion does not follow from its premise. The separateness of these limitations has no relevance — the claim requires “the [at least one] condylar element” to satisfy both limitations.
Third, the majority’s first — and apparently primary — reason for its construction is: “If the patentee had intended both condyles in a bicondylar prosthesis to meet these [geometric] limitations, he could have drafted claim 15” more naturally “to require ‘each condylar element,’ rather than ‘the condylar element.’ ” Id. at 1344. But the fact that a claim could have been drafted more clearly is not, by itself, a sufficient basis to adopt a particular interpretation of claim language. A claim can often be drafted more clearly — litigation only arises because it was not. Moreover, applying the majority’s analysis, the claim’s use of the phrase “at least one condylar element” rather than simply “a condylar element” supports the district court’s conclusion. It demonstrates that the patentee did not intend to specify the geometric requirements of only one condylar element of a bi-condylar prosthesis, but rather, intended to place requirements on the knee prosthesis’s condylar element or elements.
Ill
In sum, the district court correctly construed the claim term at issue. As I would affirm the district court’s judgment of non-infringement, I respectfully dissent.

. The parties' stipulated constructions clarify that "confronting” means facing, "engaging” means contacting, "articulation” is the movement of the knee as it ilexes or bends, and the "range of flexion” means the range of bending of the knee joint.